LILLIAN HENDRY and Others, on Their Own Behalf and on Behalf of All Others Similarly Situated, Plaintiffs, *v.* TITLE GUARANTEE AND TRUST COMPANY, Defendant.

Supreme Court, Special Term, New York County, October 30, 1937.

*Raymond L. Wise,* for the plaintiffs.

*Milbank, Tweed, Hope & Webb* [*Richard S. Homes* and *John M. Friedman* of counsel], for the defendant.

COLLINS, J. Plaintiffs, for themselves and for others similarly situated, seek an accounting. They hold certificates of participation in a bond and mortgage on premises known as No. 9453–65 One Hundred and Sixty-eighth street, Queens, N. Y.

The owner of the premises, John Boccadero, borrowed $35,000 from the defendant on August 2, 1923. As security he executed a bond and mortgage covering the premises. The defendant issued, sold and delivered to plaintiffs and others certificates of participation, representing undivided shares in the bond and mortgage. These certificates expressly obligate the defendant to " protect the mortgage security." They were guaranteed by the Bond and Mortgage Guarantee Company.

On November 2, 1927, the city of New York condemned twenty-five per cent of the mortgaged premises.

On January 8, 1930, the defendant released to Boccadero all right, title and interest to any part of the condemnation award. Simultaneously, the mortgage was extended by the defendant for three years in the original amount of $35,000.

On December 18, 1930, the final condemnation decree awarded to Boccadero $24,500, with $4,561.08 interest, and on February 4, 1931, he received these amounts from the city.

The certificate holders were kept in the dark about the condemnation proceedings. They knew nothing about the award or the

release. Their consent was not solicited. They received no part of the award; none was offered them; they were afforded no opportunity to participate in the distribution. They were notified, however, of the maturity of their certificates, about January 7, 1930, and, without knowledge of the condemnation proceedings and its consequences, they — with few exceptions — consented to an extension of the mortgage. Several certificate holders who did not consent converted their certificates into cash. The defendant received no consideration for the release.

In August, 1923, the mortgaged property was appraised at $70,000 and after the condemnation at $67,500. In June, 1936, after the Mortgage Commission foreclosed the mortgage and the property was bought in for $20,000, it was deeded to its subsidiary, the Mortgage Commission Realty Corporation, as trustee for the certificate holders.

It was stipulated at the trial that none of the certificate holders knew the exact boundaries of the mortgaged property, but relied upon the reputation and special knowledge of the defendant and upon its guaranty.

On these essential facts the plaintiffs maintain that the defendant must account to them for their share of the award. They insist that there was a duty on the defendant to collect and distribute the principal and interest of the mortgage and to protect the mortgage security, and that this duty cannot be shifted to the Bond and Mortgage Guarantee Company; further, that the condemnation award constituted principal which should have been collected by the defendant for the account of the certificate holders and distributed to them; that the award replaces the condemned land as security, and that the certificate holders' interest in the mortgage became vested on the day of taking.

The defendant counters with the contentions that by releasing the amount of the award the defendant is not liable to account; that even if it should be held that defendant had the duty to notify the certificate holders of the condemnation and of the release of the award before securing or accepting the renewals, any damages for failure so to notify are merely nominal; that, in any event, the recovery must be limited to the proportionate share of the principal of the award of such of the plaintiffs as held certificates on January 8, 1932, and must be followed by an assignment of the interest of such plaintiffs to that extent in the mortgaged premises.

1. Verbiage need not be squandered on arguing that the land was less valuable after the condemnation than before. Regardless of the appraisal, the city did not pay $24,500 and interest for nothing. That the security was weakened and lessened is manifest.

The certificate holders should have been apprised of the situation. In effect, it makes no difference whether the defendant was a trustee in a technical sense or a mere agent. It was a fiduciary, with all that the office imposes and implies. (*Marvin* v. *Brooks*, 94 N. Y. 71, 78.) It owed a duty to the certificate holders, and that duty was not casual or perfunctory. (*Harvey* v. *Guaranty Trust Co.*, 134 Misc. 417; affd., 229 App. Div. 774; affd., 256 N. Y. 526.) While they trusted the defendant, and relied on its skill and prudence and honesty, they were entitled to know what was going on and to be given an opportunity to share in the award. When the defendant omitted to inform the certificate holders of the conditions it omitted a duty. It is not a valid defense to say it would have done no good, or that the result would have been the same. The defendant's good faith is not a shield. That it exercised its best business judgment likewise is unavailing.

In the Restatement of the Law of Trusts (Vol. 1, § 201) the rule is stated thus: " A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, * * * but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies on the advice of counsel * * *. The extent of his duties and powers is determined by the trust instrument and the rules of law which are applicable."

In *Wirth* v. *Title Guarantee & Trust Co.* (N. Y. L. J. July 6, 1936, p. 55) Mr. Justice CROPSEY, holding that a mortgage company exceeded its power in extending a mortgage and releasing the original bondsmen, though the certificate holders, with unawareness of the consequences, consented to the extension, appropriately said: " The defendant would have no right to transfer the bond and mortgage, nor to give them away, nor to assign plaintiffs' interest in them, and if it did so it would be guilty of a breach of faith and would be derelict to its trust. Nor has the defendant any right to do any act that reduces the security of the plaintiffs and other certificate holders, and defendant had no right to release the bondsmen from all liability on the bond, as that took from the plaintiffs some of their security and lessened their rights."

As to the defense of consent to the extension, Mr. Justice CROPSEY said: " That the plaintiffs consented to the extension is no defense under the circumstances revealed here. * * * The effect is

just the same as though the plaintiffs had not consented. * * * Under the circumstances the defendant was in duty bound to advise the plaintiffs of the effect of consenting to the extension, or to have secured the consent of the bondsmen thereto so that they would not be released. The fact that the plaintiffs were entitled to hold the guaranty company is not a defense available to the defendant. * * * The wrongful act of the defendant in releasing the bondsmen damaged the plaintiffs and they are entitled to hold the defendant therefor. The plaintiffs are entitled to interlocutory judgment determining their right to recover and providing for the ascertainment of the damage, together with the costs of the action."

So here, when the certificate holders consented to the extension they had every reason to believe that the situation was " as was." They did not consent with a knowledge of the facts. It behooved the defendant to make known the altered condition. More, there was no consent by the certificate holders to the release of the award.

The doctrine is firmly entrenched that " When land is taken for public use, the damages awarded are to take the place of the land in respect to all rights and interests which were dependent upon and incident to it." ( *Utter* v. *Richmond*, 112 N. Y. 610; *Matter of City of New York* [*Houghton Ave.*], 266 id. 26.)

The mortgagee's right to the award becomes vested on the day of taking. (*Matter of Braico*, 235 App. Div. 132; affd., 260 N. Y. 625.)

If, as we see, the award supersedes the land, the certificate holders automatically become partners in the award. To deprive them of the major relief here sought would be a denial of their partnership rights. Once this basic concept is arrived at, the defendant's insistence that the plaintiffs were not damaged, collapses.

My determination is that the defendant must answer for its breach of trust. But how much? And to whom?

2. Whether or not the interest as well as the principal is to be shared in by the certificate holders is entangled in doubt. Of course a mortgagee is entitled to interest on his principal. But from November 2, 1927, when the city became invested with title, to December 18, 1930, when the $24,500 principal and $4,561.08 interest was paid, the guarantor paid interest to the certificate holders on the full amount of the mortgage. It seems to me, therefore, that the certificate holders are entitled to no part of the $4,561.08 interest. I so hold. Their distributive share is confined to the $24,500 principal.

3. Three of the plaintiffs acquired their certificates subsequent to the execution of the release; Frieda Buse, by investment on May

5, 1930; W. Wheeler Germond, by purchase on January 29, 1930, and Sarah J. MacLean, by inheritance from her sister on September 25, 1935, the sister acquiring the certificate in 1924.

With the acquisition of the certificates by these three plaintiffs went all the rights and privileges and obligations inherent in and which attached to the certificates. I hold that these three plaintiffs are entitled to share in the recovery. (*Pollitz* v. *Gould*, 202 N. Y. 11.)

4. Only those named as plaintiffs and who enter the action before judgment are entitled to share in the recovery. The rule is expressed in *Atkins* v. *Trowbridge* (162 App. Div. 629, 636, 637) thus: " while it may be permissible for one or more to sue in the first instance in behalf of all similarly situated, we are of opinion that judgment can properly be rendered only in favor of those who originally sued or of those who, after the commencement of the action and before judgment, have caused themselves to be joined as plaintiffs. (*Knell* v. *City of Buffalo*, 54 Hun, 80.) "

5. Finally, the defendant is entitled to all the rights of a subrogee — respecting these certificates it is entitled to such interest in the mortgaged premises as the mortgagor would have received. This right is conditioned, of course, upon payment of the judgment herein to the plaintiffs.

If, in view of the foregoing, the plaintiffs deem an interlocutory judgment of accounting necessary, let them settle same on notice. Findings and conclusions have been waived.