George HAEBERLE, Plaintiff-Appellant,

v.

BOARD OF TRUSTEES OF BUFFALO CARPENTERS HEALTH–CARE, DENTAL, PENSION AND SUPPLEMENTAL FUNDS, Defendant-Appellee.

No. 648, Docket 79–7557.

United States Court of Appeals, Second Circuit.

Argued Jan. 21, 1980.

Decided June 9, 1980.

Francis X. Murphy, Buffalo, N. Y., for plaintiff-appellant.

E. Joseph Giroux, Jr., Buffalo, N. Y. (McMahon & Crotty, Buffalo, N. Y., of counsel), for defendant-appellee.

Before SMITH * and FEINBERG, Circuit Judges, and GAGLIARDI, District Judge.**

---

\* Pursuant to § 0.14 of the Rules of this Court, this appeal is being determined by Judges Feinberg and Gagliardi who are in agreement on this opinion. Judge Smith, who heard the argument, unfortunately died on February 16, 1980. Prior to his death, Judge Smith voted to affirm the decision of the District Court and was in agreement with his colleagues on all issues in the case. He did not have the oppor-

** See note ** on page 1134.

GAGLIARDI, District Judge.

## I. STATEMENT OF FACTS

Appellant George Haeberle commenced this action against The Board of Trustees of Buffalo Carpenters Pension Fund ("the trustees") alleging that they had wrongfully denied him a pension. Haeberle was born in 1908, and was employed in the carpentry trade during his adult years. In 1955, he joined a local union affiliated with the Carpenter's District Council of Buffalo ("the union"). Six years later, in 1961, the union and the Construction Industry Employer's Association ("the employers") established the Buffalo Carpenter's Pension Fund in order to provide pension benefits to union members. In that same year, the trustees, comprised of two representatives of both the union and the employers, created a pension plan ("the plan"), providing that a member who reached age 65 and retired would be eligible for a pension if he had earned a minimum of fifteen pension credits.[1] In recognition of employment prior to the establishment of the plan, the plan awarded a full credit to employees for every year of membership in the union before 1961 regardless of the number of hours worked in the given year. The pre-1961 credits were designated "past service credits" to distinguish credits earned after the implementation of the plan. Another feature of the plan, the break in service rule, provided that an employee who failed to work a minimum of 150 hours in any one of three consecutive fiscal years would forfeit all previously earned credit.

In September 1975, the union notified Haeberle by letter that he had earned no credits for the two previous fiscal years, and that unless he earned at least 150 hours credit prior to May 31, 1976 he would suffer a break in service on that date. Sometime during October, 1975, Haeberle went to speak to Donald F. Bodowes, the fund administrator. According to the trial testimony of both Haeberle and Bodowes, Haeberle inquired about ERISA,[2] which Bodowes acknowledged would require amending the plan, and about pension eligibility requirements under the amended plan. Sometime after this visit, Haeberle left for Florida, where he spent the winter. He returned to Buffalo on approximately May 1st, 1976 and shortly thereafter again went to Bodowes' office. Although the trustees did not formally amend the plan to comply with ERISA until June 11, 1976, effective June 1, 1976, Bodowes advised Haeberle during this second conversation that Haeberle would not have sufficient pension credits to qualify for a pension under the amended ERISA plan.

Haeberle commenced this action on August 31, 1977 before he had formerly applied for and been denied pension benefits. The complaint nevertheless alleged that the trustees refused to award Haeberle the pension to which he was entitled under ERISA, and additionally, that the trustees had failed to amend the plan to conform it with ERISA by June 1, 1976, as allegedly required by that statute. The trustees, in their answer, asserted that Haeberle had failed to exhaust his administrative remedies, pursuant to Section 503(2) of ERISA, 29 U.S.C. § 1133[3]. To remedy the defect, Haeberle requested and was granted a hearing before the trustees in May 1978.

---

tunity, however, to see this opinion prior to his death.

** Honorable Lee P. Gagliardi, District Judge of the Southern District of New York, sitting by designation.

1. A member earned pension credits commensurate with the number of hours worked in a year, calculated from June 1 through May 31. A maximum of one pension credit per year was assigned for 1200 or more hours, and a proportionate fraction for fewer hours.

2. Employee Retirement Income Security Act of 1974, discussed in detail, *infra*.

3. 29 U.S.C. § 1133 provides:

In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

The trustees informed Haeberle by letter dated July 25, 1978 that they had denied his request for pension benefits. In summary, the trustees rejected Haeberle's application because they contended that by suffering a break in service on May 31, 1976, thereby forfeiting all previously earned credits, Haeberle could not qualify for a pension under the vesting provision of the amended plan which became effective on June 1, 1976. Haeberle then filed an amended complaint on the day of trial alleging that defendant had failed to comply with ERISA's requirements by June 1, 1975, as mandated, and that it had failed to provide a description of the plan to participants within 120 days of compliance.

At the jury trial, plaintiff testified to the following conversation with Bodowes in October 1975:

> Donald Bodowes got my file out and said 'yes, you have a vested interest under the new law and I will place a tab on your file and when our plan is accepted by the Government which we figure will be the following year, you will be entitled to a portion of a pension.'

Bodowes in contrast recalled the meeting differently.

> A. Mr. Haeberle approached me in the Fund office and indicated to me that he felt that he was eligible for a form of pension from the Buffalo Carpenters Pension Fund. I reviewed his record and his record indicated that he did not have the required fifteen pension credits at that time and it was brought up by Mr.

Haeberle the fact that perhaps he would be covered under the new upcoming ERISA and at that time I explained to him that ERISA was new to us as it was to most everyone; that we had not embarked on any form of vesting which he indicated to me would provide a route for him for his pension and I indicated to him at that time that I was aware of the fact that somewhere sometime we were going to have to have vesting incorporated in our plan. What form of vesting, I had no idea.

> Q. Okay. Now, Mr. Bodowes, did you ever tell, during that conversation, did you tell Mr. Haeberle that h[is pension] was vested?

> A. No, I did not.

Following this conversation, Bodowes made a notation on Haeberle's file as follows: "[i]n on 10/28/75 was advised to wait for new pen. rules re vesting."

Plaintiff testified that he had not discussed the union letter warning of the break in service with Bodowes, nor had he made any effort to seek 150 hours of employment before departing for Florida.[4] On cross-examination concerning his activity in May following Bodowes' advice that he would not qualify for a vested pension under the amended plan, plaintiff explained that he had not attempted to seek employment because he believed there was insufficient time to accumulate 150 credit hours in order to forestall the impending break in service.[5] In addition to the salient portion

---

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

This section has been interpreted to deprive federal courts of jurisdiction to review the denial of benefits until the decision of the trustees is final. *See Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071 (E.D.Pa.1979); *Taylor v. Bakery & Confectionary Union, etc.*, 455 F.Supp. 816 (E.D.N.C.1978).

4. Plaintiff's testimony on cross-examination with respect to the 150 hours was as follows:
   Q. So Mr. Bodowes . . . didn't advise you not to get the one hundred fifty hours?

A. He didn't advise me to.
Q. Did you not ask him?
A. He said, "You are qualified for vested interest." That's reason enough. I am over 65 years old at that point and I don't think it was necessary for me to go back to work. I can't compete with those young men that are up on those scaffolds.

5. Plaintiff conceded that he had worked 152 hours within the month of May, 1973 in order to prevent a break in service on May 31, 1973. See n.9, *infra*. He insisted, however, that he could not have repeated that performance in May 1976. Although defense counsel attempted to elicit an admission from Haeberle that he could have worked overtime within the weeks

of trial testimony set forth above, appellant acknowledged that the union sent him annual notices reflecting his accumulated pension credits as well as periodic information describing the plan and pension eligibility requirements. The parties at trial also submitted documentary evidence of the steps taken by the trustees to comply with ERISA.

The Trial Court reserved decision on the motion for a directed verdict at the close of plaintiff's case, and granted the renewed motion after both sides had rested. The Court held that the trustees' decision to deny Haeberle benefits was neither arbitrary nor capricious because he did not have sufficient credits to qualify for a pension under either the original or amended plan.[6] Since plaintiff's submission of proof revealed that he was relying on an estoppel theory, the District Court further held that the plaintiff would not have been entitled to judgment even if the jury had fully credited plaintiff's testimony describing the October conversation with Bodowes because Bodowes "lacked authority to bind the trustees." Finally, the court rejected plaintiff's argument that the trustees violated ERISA by failing to amend the plan in a timely fashion.[7]

Haeberle raises three arguments on appeal: (1) that he has met the criteria for, and thus is entitled to, a vested pension under ERISA, (2) that if he does not qualify for an ERISA pension, it is due solely to appellee's failure to comply with ERISA in a timely manner, and (3) that the District Court erred by directing a verdict in favor of the trustees since Haeberle would have been entitled to a verdict on an estoppel theory had the jury credited his testimony

that he relied on Bodowes' alleged representation.

## II.  DISCUSSION

Although we feel constrained once again to express reservation about the practice of taking a case away from a jury, rather than setting aside an incorrect verdict, if necessary, *see Gratian v. General Dynamics, Inc.,* 587 F.2d 121, 122 (2d Cir. 1978), we agree with the District Court that the record supports the unassailable conclusion that appellant is not entitled to a pension under any theory and that the District Court therefore correctly ruled that defendant was entitled to judgment as a matter of law. Our review of the record indicates that the appellant does not meet the eligibility requirements for a pension, and that his argument that the trustees delayed in meeting ERISA's requirement only obfuscates the real issue of plaintiff's inadequate work record. A brief overview of ERISA is necessary for a full understanding of the first and second issues raised on appeal. The estoppel question also requires some familiarity with ERISA and the aspects of the statute that relate to this argument will also be discussed.

Congress enacted ERISA, codified at 29 U.S.C. §§ 1001, *et seq.,* in 1974. This complex regulatory scheme imposes rigid standards on employee pension plans in order to establish "minimum standards . . . assuring the equitable character . . . and financial soundness" of private pension plans. 29 U.S.C. § 1001(a). *See Cartledge v. Miller,* 457 F.Supp. 1146, 1156 (S.D.N.Y. 1978). ERISA is administered jointly by the Departments of Labor and Treasury.

---

remaining in May in order to accumulate enough credits, plaintiff's responses were equivocal.

**6.** The District Court correctly determined that a decision of the trustees must be upheld unless it is found to be arbitrary and capricious. *See Hicks v. Pacific Maritime Ass'n,* 567 F.2d 355 (9th Cir. 1978); *Phillips v. Kennedy,* 542 F.2d 52, 55 (8th Cir. 1976); *Danti v. Lewis,* 312 F.2d 345 (D.C.Cir. 1962); *Taylor v. Bakery & Confectionary Union, etc., supra,* 455 F.Supp. at 819.

**7.** The Court's finding appears to be based on an insufficiency of evidence to support the allegation that the trustees' actions were untimely and alternatively on plaintiff's failure to comply with 29 U.S.C. § 1132(h), requiring service of the complaint on the Secretaries of Labor and Treasury. Since the District Court ruled on the merits of the claim, we have reached that issue and affirm the District Court's conclusion that the claim is patently without merit.

29 U.S.C. §§ 1202, 1203, 1204. The statute regulates in several broad areas, establishing, *inter alia*, standards of fiduciary responsibility, requirements for the periodic filing of financial reports with the Secretaries of Labor and Treasury and mandatory disclosure of plan contents to participants. In addition, a plan must incorporate one of three alternative vesting provisions set forth in the statute. In anticipation that existing plans would undergo a period of transition in implementing ERISA's requirements, Congress provided that each of the several regulatory provisions would become effective on a different date. *See Riley v. MEBA Pension Trust*, 570 F.2d 406, 411 (2d Cir. 1977). Appellant's first argument that he had acquired sufficient pension credits to qualify for a vested pension under ERISA requires an examination of the requirements for a vested pension and the effective date of the vesting provision.

Section 203 of ERISA, 29 U.S.C. § 1053, establishes minimum vesting requirements. § 1053(a) provides:

> Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

Paragraph (1) requires that an employee's rights in benefits derived from his own contributions be nonforfeitable. Paragraph (2) sets forth in subsections (A), (B) and (C) the three alternative vesting plans. Subsection (A), the operative vesting provision of the amended plan at issue provides:

> A plan satisfies the requirements of this subparagraph if an employee *who has at least 10 years of service* has a nonforfeitable right to 100 percent of the accrued benefit derived from employer contribution (emphasis added).

A "year of service," is defined as a year "during which the participant has completed 1,000 hours of service." 29 U.S.C.

§ 1053(b)(2)(A). The statute explicitly permits the exclusion of any credit for the years of service prior to the adoption of the original pension plan. 29 U.S.C. § 1053(b)(1)(C). This statutory section, imposing mandatory vesting requirements, becomes binding upon plans like the instant one which were in effect on January 1, 1974 at the beginning of the plan year that commenced after December 31, 1975. 29 U.S.C. § 1061. Since the plan year for the amended plan is the fiscal year June 1, through May 31, ERISA's mandatory vesting requirements did not become applicable to the amended plan until June 1, 1976.

▆ Appellant's first claim, that he was wrongfully denied ERISA pension benefits to which he was allegedly entitled pursuant to 29 U.S.C. § 1053, is without merit for two reasons.[8] First, the decision of the trustees, properly undisturbed by the District Court, was that plaintiff could not invoke 29 U.S.C. § 1053 since that section did not become effective until June 1, 1976, after plaintiff had forfeited all previously earned pension credits. In *Schlansky v. United Merchants & Manufacturers, Inc.*, 443 F.Supp. 1054 (S.D.N.Y.1977), the court rejected a claim that ERISA's vesting provision protected the pension rights of an employee who was discharged prior to the effective date of § 1053. *Id.* at 1064. The court's reasoning that ERISA did not apply retroactively is equally applicable to the instant situation in which Haeberle forfeited all previously earned pension credits on May 31, 1976—one day prior to the effective date of ERISA's vesting provision. Other courts have uniformly rejected claims seeking to invoke ERISA's vesting provision when employees' interests have been terminated prior to the effective date of § 1053. *See Davis v. Central States Southeast & Southwest*, 460 F.Supp. 926, 928 (E.D.Tenn.1978); *Fremont v. McGraw-Edison Co.*, 460 F.Supp. 599, 601 (N.D.Ill.1978), *aff'd in part, rev'd in part*, 606 F.2d 752 (7th Cir. 1979). *See also Keller v. Graphic Sys-*

---

**8.** Haeberle seeks to challenge the trustees' decision by reading one portion of § 1053 out of context, thus distorting the meaning of that statutory provision. Plaintiff's argument is

that the statute "requires only that participant have attained normal retirement age to entitle him to normal retirement benefits." Brief on appeal at 9.

*tems of Akron, Inc.*, 422 F.Supp. 1005, 1008–1009 (N.D.Ohio 1976). We are also persuaded that the trustees' decision should be upheld on the alternative ground that even had Haeberle not suffered a break in service, he would not have qualified for a pension under the amended plan. When the trustees amended the pension plan to conform to ERISA, they elected a ten year vesting provision that eliminated "past service credits". Haeberle's employment record, set out in the margin,[9] reveals that he worked a minimum of 1,000 hours, and thus accumulated one credit in each of only seven years after 1961. Thus, even assuming no break in service, appellant remains three pension credits short of the required credits for a vested pension under the amended plan.

Haeberle's second argument on appeal— that his failure to qualify for an ERISA pension was due to appellee's noncompliance with its mandate—requires some familiarity with two additional sections of ERISA, the provision establishing standards of fiduciary responsibility, 29 U.S.C. §§ 1101–1114, and the reporting and disclosure section, 29 U.S.C. §§ 1021–1031. The fiduciary responsibility provisions of ERISA became effective on January 1, 1975, or, with approval of the Secretary of Labor, on January 1, 1976. 29 U.S.C. § 1114(a) & (b)(2). The subject of frequent judicial interpretation and scholarly commentary,[10]

these sections are clearly designed to protect pension funds from improper and improvident acts by those entrusted with responsibility for their investment. The introductory provision to this portion of the statute provides that a written plan naming fiduciaries be established. 29 U.S.C. § 1102(a)(1) & (2). The reporting and disclosure sections require periodic filing of detailed financial statements and other descriptive information with the Secretaries of Labor and Treasury to insure a plan's compliance with ERISA's requirements. In addition, these provisions require that plan participants be provided with current information which may affect pension rights. Although compliance is required by January 1, 1975, 29 U.S.C. § 1031, a plan administrator may defer compliance until after IRS approval, provided that an ERISA notice is furnished to plan participants prior to May 30, 1976. 29 C.F.R. § 2520.104–6.

Haeberle contends that the trustees violated 29 U.S.C. § 1102 by failing to establish a written plan by January 1, 1975 and that the trustees' violation of that section caused a delay in distributing information about the revised plan to participants. This entire argument is fallacious for two reasons. First, Haeberle misconceives the meaning of 29 U.S.C. § 1102, requiring a written plan. That section anticipates that certain extant pension plans might not have been reduced to the formality of a writing,

**9.** PERMANENT RECORD OF PENSION CREDITS

George J. Haeberle
331 Crestwood Avenue
Buffalo 16, N.Y.
091–12–7437
Date of Birth—8–25–08

| Year End | Total Hours Credited Fiscal Year | Pension Credit For Yrs. | Accumulated Pension Credits Years | Quarters |
|---|---|---|---|---|
| | | | 5 | 3/4 |
| 1962 | 1012½ | 3/4 | 6 | 1/2 |
| 1963 | 1744 | 1 | 7 | 1/2 |
| 1964 | 1975 | 1 | 8 | 1/2 |
| 1965 | 1731 | 1 | 9 | 1/2 |
| 1966 | 1169 | 3/4 | 10 | 1/4 |
| 1967 | 1747 | 1 | 11 | 1/4 |
| 1968 | 864½ | 1/2 | 11 | 3/4 |
| 1969 | 1656 | 1 | 12 | 3/4 |
| 1970 | 574½ | 1/4 | 13 | |

| Year End | Total Hours Credited Fiscal Year | Pension Credit For Yrs. | Accumulated Pension Credits Years | Quarters |
|---|---|---|---|---|
| 1971 | none | 0 | 13 | |
| 1972 | none | 0 | 13 | |
| 1973 | 152 | 0 | 13 | |
| 1974 | none | 0 | 13 | |
| 1975 | none | 0 | 13 | |
| 1976 | none | 0 | 13 | |

BREAK IN SERVICE

**10.** *See e. g., Morrissey v. Curran*, 567 F.2d 546 (2d Cir. 1977); *Dinko v. Wall*, 531 F.2d 68 (2d Cir. 1976); *Marshall v. Teamster's Local 282 Pension Trust Fund*, 458 F.Supp. 986 (E.D.N.Y. 1978); Little and Thrailkill, Fiduciaries Under ERISA: A Narrow Path to Tread, 30 Vanderbilt L.Rev. 1 (1977); Note, Fiduciary Standards and

and therefore imposes a requirement of a writing by the effective date of the section. That section, however, has no relevance to the pension plan at issue because the record indicates that a written pension plan had long been in effect. Secondly, the record indicates that the trustees complied fully with the notice requirements of ERISA, see 29 C.F.R. § 2520.104–6, by distributing notice to all employees about the revised plan on May 10, 1976, and were not required to issue additional information until May 5, 1979, 90 days after approval by the Secretary of Treasury.

■ Haeberle's final argument is that the conflicting testimony between himself and Bodowes created an issue of fact which, if decided favorably to him, would raise an estoppel against the trustees and require judgment in his favor. The District Court, viewing the evidence in the light most favorable to plaintiff, *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957 (2d Cir. 1970), concluded that since Bodowes had no authority to speak for the trustees, Haeberle would not be entitled to judgment on the estoppel issue as a matter of law. We reach the same result based on a slightly different ground. The principle of estoppel permits recovery when "a representation of fact made to a party who relies thereon with the right to so rely may not be denied by the party making the representation if such denial would result in injury or damage to the relying party." 1 *Williston on Contracts*, § 139 at 600 (3d ed. 1957); see *Philo Smith & Co., Inc. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977); *Insurance Company of North America v. McCleave*, 462 F.2d 587, 588 (3d Cir. 1972); *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527, 534 (3d Cir. 1970); *Redington v. Hartford Acc. & Indem. Co.*, 463 F.Supp. 83 (S.D.N.Y. 1978). Courts have been reluctant to apply the estoppel doctrine to require the payment of pension funds, perhaps in recognition of the fact that "[t]he actuarial soundness of pension funds is, absent extraordi-

nary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan." *Phillips v. Kennedy*, 542 F.2d 52, 55, n. 8 (8th Cir. 1976). *See also, Moglia v. Geoghegan*, 403 F.2d 110 (2d Cir. 1968); *Feathers v. U.M.W. Retirement Fund*, 99 LRRM 2287 (D.D.C.1978); *Hodgins v. Central State Pension Fund*, 94 LRRM 2507 (E.D.Mich. 1976); *Boase v. Lee Rubber & Tire Co., supra*, 437 F.2d 527; *Craig v. Bemis Company, Inc.*, 517 F.2d 677 (5th Cir. 1975).

■ We approach the claim in this case mindful both of the *caveat* expressed by the Eighth Circuit and of the necessity for the party who seeks to invoke estoppel to prove every element of the doctrine. After a thorough review of Haeberle's trial testimony and work record, we find that plaintiff failed to sustain the burden of proving that he acted in reliance on Bodowes' alleged statement, or, equally important, that he was injured as a result of such reliance. Haeberle's employment record indicates that he effectively ceased all gainful employment in 1969. In 1970, he worked only 574 hours for which he earned only one-quarter of a pension credit, and in 1973, he worked 152 hours which protected him from a break in service in that year, but did not earn him any additional pension credits. Although Haeberle claims that he would have worked 150 hours between October 1975 and May 1976 had he not relied on Bodowes' October statement, he testified that he simply "[couldn't] compete with those young men that are up on those scaffolds", a credible statement from a man who had not worked for six years and who was then in his late 60's. This testimony casts grave doubts on the argument that Haeberle was injured by Bodowes' alleged misrepresentation. Proof of injury is also lacking since there is absolutely no evidence in the record to establish that Haeberle, even if he were able to prevent a break in

the Prudent Man Rule Under the Employment Retirement Income Security Act of 1974, 88 Harv.L.Rev. 960 (1975); *See generally*, Special

Issue Fiduciary Responsibilities Under the Pension Reform Act, 31 Business Lawyer, 1 *et seq.* (1975–76).

service, would have been further able to continue working for a minimum of 1,000 hours for three years in order to meet the ten years of service requirement for an ERISA pension. In fact, all the evidence, including appellant's age, work record, and residence in Florida, indicates the contrary. Finally, although Haeberle testified that he relied on Bodowes' representation, he conceded that he made no attempt to protect his accrued benefits once he learned in May 1976 that he would not be entitled to an ERISA pension when that plan went into effect. We think the trial court was correct in observing that Haeberle, had he relied on Bodowes' alleged misstatement, would have made at least some effort to obtain 150 hours of employment before the end of the plan year, as he had done in 1973, in order to prevent a break in service. *See generally, Philo Smith & Co., Inc. v. USLIFE Corp., supra,* 554 F.2d at 36 (plaintiff not entitled to judgment on estoppel theory where no proof of "irremedial change in position"); *Boase v. Lee Rubber & Tire Corp., supra,* 437 F.2d at 534 (same).

Accordingly, the judgment of the District Court is affirmed.