**June DONNELLY, Plaintiff,**

v.

**The BANK OF NEW YORK COMPANY, INC., and Irving Bank Corporation Benefits Protection Trust, Defendants.**

**No. 92 Civ. 0045 (RWS).**

United States District Court,
S.D. New York.

Aug. 28, 1992.

1248

Phillips Cappiello Kalban, Hofmann & Katz, P.C., New York City (Sidney H. Kalban, of counsel), for plaintiff.

Michael D. Povman, New York City, for defendant, The Bank of New York.

Kelley Drye & Warren, New York City (Vincent J. Conlan, Esq. of Counsel) for defendant Irving Bank Corp.

OPINION

SWEET, District Judge.

Defendants The Bank of New York Company, Inc. ("BNYC") and Irving Bank Corporation Benefits Protection Trust (the "Trust") through its trustee Manufacturers Hanover Trust Company ("MHT" or the "Trustee") (BNYC and the Trust are referred to collectively as the "Defendants") have moved under Rule 56, Fed.R.Civ.P.

for summary judgment dismissing the complaint of plaintiff June Donnelly ("Donnelly"), a former employee of Irving Trust Company ("Irving"). In this action, Donnelly seeks severance payments pursuant to an employee welfare benefit plan established by Irving to protect its employees in the event of a takeover. For the reasons stated below and upon the following uncontested facts and conclusions of law, the motions are granted, and summary judgment will be entered dismissing the complaint.

## Prior Proceedings

Donnelly filed her summons and complaint on January 31, 1992. Issue has been joined, and no discovery has been taken.

Donnelly has set forth four claims in her complaint. The first claim for relief alleges that the Defendants breached their fiduciary duties under § 404 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104, by failing or refusing to inform Donnelly of her rights to severance benefits. The second claim alleges that the Defendants breached their fiduciary duties under § 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), by failing to comply with the documents and instruments governing the Plan, as defined *infra*. The third claim alleges a violation of the claims procedure set forth in § 503 of ERISA, 29 U.S.C. § 1133, based on the Defendants' denial of severance benefits and failure to specify in writing the reasons for the denial or to accord Donnelly a full and fair review. The fourth claim alleges that the Defendants violated § 510 of ERISA, 29 U.S.C. § 1140, by interfering with Donnelly's protected rights under ERISA. Donnelly seeks a declaration that she is entitled to severance benefits under the Policy, a determination of the amount of severance benefits to which she is entitled, an order enjoining the Defendants to pay her severance benefits and attorneys' fees and costs.

The present motion was filed on April 22, 1992. Oral argument was heard on May 20, 1992, at which time the motion was considered fully submitted.

## Facts

Donnelly was initially hired by Irving on April 20, 1966. By 1988, Donnelly had risen to the position of senior clerk and unit leader in Irving's Corporate Agency Division where her duties were to ensure the accuracy of entries and Irving's balance on more than 800 corporate accounts. She was in Irving's employ at the time of the merger between Irving Bank Corporation ("IBC") (Irving's parent) and BNYC in November 1988, and thereafter remained as an employee of BNY, a BNYC subsidiary, until she resigned in December of 1990 or January of 1991.

On July 2, 1987, the IBC Board of Directors adopted the IBC Separation Policy (the "Policy" or the "Plan"), an employee welfare benefit plan under ERISA. The Plan provides for severance payments under certain circumstances, only one of which is in issue in this action. Under the relevant provision of the Plan, a participant is entitled to severance benefits if, within two years of a "Change in Control"[1] his or her job duties are materially diminished without consent, and he or she resigns within sixty days of the diminishment. Specifically, § 4.2(a)(iii) states that:

> if within two years of a Change in Control a participant's duties and responsibilities are materially diminished without his consent, he may terminate his employment within sixty (60) days of the occurrence of such reduction and be entitled to Severance Benefits set forth in Section 4.3.

*See id.* § 4.2(a)(iii). Under § 4.3 of the Plan, an employee that satisfies these conditions is entitled to severance of one

---

**1.** "Change in Control" is defined in the Plan to mean either of the following events:

(i) any person is or becomes the beneficial owner, directly or indirectly, of securities of [IBC] representing 25% or more of the combined voting power of [IBC]'s then outstanding voting securities; *or*

(ii) in any one year period, individuals who at the beginning of such period constitute the Board cease for any reason to constitute at least a majority thereof at or prior to the conclusion of such one year period.

Peterson Aff. Ex. A § 2(c).

month's pay ("one-twelfth of the Participant's Base Salary") for each year of service up to a maximum of twenty four years. As of April 1990, Donnelly was entitled to that maximum—twenty four months base salary—if severed as set forth in the Plan. The Plan further provides that in the event IBC or its successor denies an application for benefits, it must provide the applicant with a written explanation of the reasons for the denial.

Shortly after it adopted the Plan, IBC entered into a Trust Agreement with MHT on January 22, 1989 under which it established a Trust to provide a litigation fund to qualified claimants to pursue claims under the Policy turned down by the Plan Administrator. MHT was selected to serve as trustee. By its own terms, the Trust "shall be administered, in accordance with the laws of the United States and of the State of New York" and "[n]othing in this Agreement shall be construed to subject the Trust created hereunder to [ERISA]." Conlan Aff. Ex. B Art. TWENTIETH (a). The preamble to the Trust also notes that "the Trustee is not a party to the Plans" covered by the Trust Agreement.

Under the terms of the Trust, following a "Change in Control," a participant of the Plan may notify the Trustee that IBC or its successor has refused in writing to pay a claim asserted under the Plan. After receiving such a notification, the Trustee must determine whether the claim for benefits has any basis in law and fact as defined by the Plan and as restated in the Trust. The Trustee considers the claims through an informal committee (the "Trustee Committee"), which meets with the claimant, considers all information furnished by the claimant and the Plan Administrator, and evaluates whether the claimant's case is plausible. The Trust is not permitted to provide any benefits if the Trustee determines that the employee's claim has no basis in law or fact. *See id.* Art. NINTH (d)(2).

On October 7, 1988, BNYC and IBC entered into a merger agreement, and a "Change in Control" under the terms of the Plan occurred on November 29, 1988 when IBC was merged into BNYC. This change in control triggered the provisions of both the Plan and the Trust. As of the time BNYC took over Irving, BNYC became the Plan Administrator.

Donnelly remained as an employee of the merged institution's subsidiary, BNY. At first, her duties remained the same, and she continued to work in the same location. In the fall of 1989, her work station was moved a number of times although she continued to be charged with her normal tasks. Each time she was moved she was informed that the changes were temporary and that she would be returned shortly to a steady location with her previous duties.

In December 1989 Donnelly was moved to 90 Washington Street where, for about a month and a half, she continued work in the mornings on the accounts to which she had previously been assigned by Irving. In the afternoons, she assisted in reconciling BNY accounts. Beginning in late January or early February 1990, Donnelly was no longer permitted to work on her long-standing accounts, and BNY began training her in its method for correcting reject reports, a task which had been only a small part of her previous duties. When she spoke to her supervisor and his manager during that period about the apparent changes in her duties, she was advised that BNY had not had a reconciliation department until recently and that the situation would improve upon a contemplated move back to 101 Barclay Street, her prior location, where necessary technical equipment would be available.

Shortly after April 20, 1990, the twenty-fourth anniversary of Donnelly's employment, Donnelly inquired about her annual review and raise and was told that she would not receive any raise because she was the highest paid individual at her level. Perceiving that her work status had been permanently reduced, she began inquiring about her rights to severance pay. On April 23, 1990 she told the BNY employee relations representative that she wanted her severance pay and would leave. In May 1990 she was informed that it was BNY's position that her duties had not

been "materially diminished" and that in any case her request was not timely. She was also advised that she could resign and reapply for severance benefits but that upon resignation she would lose her medical benefits.

Donnelly then wrote to BNY's Chairman of the Board, who referred her letter to the manager of the employee relations department. This individual repeated the previous advice that Donnelly was entitled to no severance benefits.

By late May 1990, Donnelly became disabled and could not continue working. On June 5, 1990, she wrote to the Chairman of BNY, recounting her job experience since November of 1989, including the loss of her duties and equipment, and the reassurances given to her. She stated: "I fully realize that my job has diminished drastically. I am now doing a small part of reconcilimen [sic] when I once performed the entire job." On or about June 21, 1990, she wrote BNY concerning her right to severance pay under the Policy.

Donnelly commenced sick leave on June 25, 1990. Both her husband, who suffers from asbestosis, and she needed medical care and, therefore, continuance of her medical benefits. She was told by Geraldine Gallashaw, BNY's Affirmative Action Vice President, that if she resigned in order to file a formal application for severance pay she would lose her coverage under BNY's medical plan.

By letter dated July 21, 1990, BNY Senior Vice President Frank Peterson, Jr. ("Peterson") responded to Donnelly's June 19, 1990 letter. He stated that BNY "is not able to support your request to receive severance benefits under [the Plan]." He continued to advise her, "[h]owever, please be aware that our decision does not prevent you from applying for benefits directly through the Irving Benefits Protection Trust."

In August 1990, the Trustee received a letter from Donnelly's attorney requesting the Trustee to consider her claim for severance benefits. By letter to Donnelly's attorney dated September 4, 1990, BNY advised that before she could avail herself of the benefits of the Trust, Donnelly would have to resign her employment at BNY, make a formal written demand for payment of severance benefits and receive a letter from BNY denying her those benefits. *See* Donnelly Aff. Ex. B. This advice was confirmed by Richard Alpern, counsel to BNY, by letter dated October 3, 1990. *See id.* Ex. D.

A further letter dated October 31, 1990 was sent on Donnelly's behalf which enclosed copies of correspondence between counsel concerning Donnelly's claim for severance benefits and an affidavit by Donnelly, sworn to on October 31, 1990, which described her claim for severance benefits and requested MHT's assistance. *See* Conlan Aff. Ex. D. The affidavit confirmed that Donnelly had not yet terminated her employment with BNY as of October 31, 1990. During 1990 she received pay, additional retirement credits and disability benefits.

By letter of December 20, 1990, Donnelly submitted her resignation on January 4, 1991. *See* Donnelly Aff.Ex. E. Thereafter, on January 25, 1991, BNY rejected her claim for severance benefits on the grounds that her responsibilities had not been materially diminished and that she failed to resign within sixty days of the alleged diminution. *Id.* Ex. F. On February 1, 1991, the Trustee Committee met with Donnelly and she confirmed that she had resigned her position on December 20, 1990.

Thereafter, the Trustee Committee advised Donnelly that the Trustee had determined that it was appropriate to discuss her claim with BNY, and the Trustee Committee met with representatives of BNY on March 22, 1991. *See id.* Ex. G. The Trustee Committee thereafter met and evaluated Donnelly's claim.

The Trustee concluded that Donnelly's claim for severance benefits under the Plan had "no basis in law and fact." The Committee advised her in a letter dated March 26, 1991 that "under the terms of the Trust, it would be inappropriate to apply further Trust assets to attempt to enforce [her] claim." *See id.* Ex. I.

*Discussion*

### 1. *Standard for Summary Judgment*

The standard to be applied in determining motions for summary judgment is well known.

> Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." However, where the non-moving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim.

*Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991); *see also Bay*, 936 F.2d at 116.

### 2. *Donnelly Has Failed to Support Her Claim Against BNYC*

#### A. *Donnelly Is Not Entitled to Severance Benefits*

As found by the uncontested facts set forth above, Donnelly was confronted in the spring of 1990 with an unenviable decision: either to resign and seek severance benefits over the advice of her employer that it was unlikely that she would qualify or to remain as an employee and maintain the health benefits provided for herself and her husband. There is no dispute that she chose the latter course.

Donnelly herself asserts that her duties were materially diminished no later than April 20, 1990, *see* Donnelly Aff. ¶ 9; *id.* Ex. A (Aug. 27, 1990 letter from Donnelly's counsel to Trust stating that Donnelly "did not become aware that her responsibilities had been diminished permanently until the end of April 1990"); Plaintiff's Response to Defendants' 3(g) Statements ¶ 1, by which time she was fully familiar with her rights to severance benefits under the Plan. At the very latest, Donnelly acknowledged her perception of the diminution in her duties by June 5, 1990, when she wrote to the Chairman of BNY. Nevertheless, Donnelly did not resign until December 20, 1990 if the date of her resignation letter controls or January 4, 1991 if the date she submitted the letter controls.

The right to a benefit turns on the provisions of the plan that define that benefit. *See Bogue v. Ampex Corp.*, 750 F.Supp. 424, 427 (N.D.Cal.1990) (resolution of plaintiff's claim under ERISA § 502 for benefits "turns on an interpretation of the plan provisions which define the severance benefits"); *cf.* 29 U.S.C. § 1104(a)(1)(D) (fiduciary must discharge duties with respect to plan "in accordance with documents and instruments governing the plan"). Regrettably for Donnelly, the relevant terms of the Plan unambiguously require that a claimant who suffers a diminution in duties must resign within sixty days to receive severance benefits. Thus, even assuming that Donnelly's duties were in fact diminished (a fact which the Defendants contest), the undisputed seven- to nine-month lapse between the alleged diminishment and Donnelly's resignation precludes her under the terms of the Plan from seeking severance benefits.

To avoid the consequences of her decision not to resign, Donnelly claims that BNYC is equitably estopped from denying her severance benefits based on the untimeliness of her resignation, alleging that BNY misled her not to resign in April of 1990 by telling her that the changes in her position were temporary. She claims that, had it not been for BNY's representations, she would have resigned in May 1990 and been eligible under the Plan for severance benefits.

■ Although the doctrine of equitable estoppel is applicable in ERISA actions, *see Haeberle v. Board of Trustees*, 624 F.2d 1132, 1139 (2d Cir.1980), the principle of estoppel permits recovery only when " 'a representation of fact made to a party who relies thereon with the right to so rely may not be denied by the party making the representation if such denial would result in injury or damage to the relying party.' " *Id.* (quoting 1 *Williston on Contracts* § 139, at 600 (3d ed. 1957) (other citations omitted)). The reliance must be reasonable. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1452 (S.D.N.Y.1983). Furthermore, courts are "reluctant to apply the estoppel doctrine to require the payment of pension funds," *Haeberle*, 624 F.2d at 1139, because "[t]he actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the plan." *Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir.1976).

■ Based on the uncontested facts, the doctrine is inapplicable here for four reasons. First, BNY's representations in April were merely statements of opinion that Donnelly would not qualify for severance benefits based on any changes in her duties as of that time. Second, Donnelly had no "right" and it was not reasonable for her to rely on any such representations because the Plan does not provide participants with the right to a determination of entitlement prior to resignation. Third, Donnelly was not "damaged" by the representation because BNY's consistent position has been that her duties were not materially diminished. Thus, even if she had resigned within sixty days of April 20, 1990, she would not have recovered severance benefits. Fourth, the Plan by its terms provides that an employee claiming severance benefits must have resigned within sixty days of the diminution in duties, *not* within sixty days of her subjective perception that such diminution is permanent. Thus, BNY's alleged representations that the change in Donnelly's duties was temporary are immaterial for purposes of estoppel. A contrary conclusion would be tantamount to allowing Donnelly to use her estoppel claims to rewrite the terms of the Plan, a result rejected by courts. *See, e.g., Davidian v. Southern Cal. Meat Cutters Union & Food Emps. Ben. Fund*, 859 F.2d 134, 136 (9th Cir.1988).

Perhaps most importantly, however, even if Donnelly's allegations with respect to BNY's April statements were supported in fact, there is no dispute that any illusions were dispelled by June 5, 1990 when she "fully realize[d] that [her] job ha[d] diminished drastically." Thus, she would have had to resign within sixty days of that date to be eligible for severance benefits.

In addition, the Defendants claim that Donnelly's claim was untimely because she did not resign within two years of the Change of Control, as required by section 4.1 of the Policy, which states that "[a] Participant shall be entitled to ... a Severance Benefit ... if a Change in Control has occurred and if, within two years thereafter, the Participant's employment ... shall terminate for any reason specified in Section 4.2, whether the termination is voluntary or involuntary." This argument is without merit, however, because the Plan requires that the diminishment take place within two years of the change in control, not the resignation.

Donnelly's choice in June of 1990 and her decision not to resign at that time bars her from asserting her right to severance benefits under the Plan.

### B. *Donnelly May not Maintain her Claims for Breach of Fiduciary Duties Against BNYC*

■ Donnelly has also failed to raise material facts supporting her claims against BNY under § 404 of ERISA, 29 U.S.C. § 1104, for breach of fiduciary duties (first and second claims for relief). In the first instance, Donnelly may not sue for a breach of fiduciary duties under ERISA in her individual capacity. Section 409 of ERISA, 29 U.S.C. § 1109, the statute authorizing a suit for breach of fiduciary duties under § 404, provides that such an action can be maintained only on behalf of

the plan itself, not by an individual beneficiary on her own behalf. *See, e.g., Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140–43, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985) (recovery for violation of § 409 inures to benefit of plan as a whole); *O'Neil v. Gencorp, Inc.*, 764 F.Supp. 833, 833–34 (S.D.N.Y.1991).

C. *The Facts Do Not Support Donnelly's Claims of Violations of ERISA's Reporting, Publication and Review Requirements or of Interference with Protected Rights*

Even if Donnelly could properly maintain her claims for breach of fiduciary duty on her own behalf, she has failed to raise facts that create a material issue as to the viability of the substantive bases for these claims.

The basis of the First Claim for Relief that BNY violated its fiduciary duties is the allegation that BNY failure to inform Donnelly of her rights to severance benefits, pursuant to §§ 101 and 105 of ERISA, 29 U.S.C. §§ 1021, 1025. The relevant parts of these sections require the administrator of a plan to furnish each participant with a summary plan descriptions, statements with respect to annual reports and other documents that specify the amounts of accrued benefits. The complaint contains no allegation that BNY failed to provide Donnelly with any of the information covered by these sections, and the factual submissions do not raise facts which indicate otherwise.

The undisputed facts also require dismissal of the Second Claim for Relief against BNY, under which Donnelly alleges that BNY breached its fiduciary duties under § 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D), by failing to comply with "the documents and instruments governing the [P]lan." As discussed above, the relevant section of the Plan provides that a participant is entitled to claim severance benefits only if her duties are materially diminished within two years of a change in control and she resigns within sixty days of the diminution. As the uncontested facts establish, Donnelly did not resign within sixty days after the date on which she herself insists her duties were materially diminished. Thus, BNY fully complied with the documents governing the Plan in refusing to pay her severance benefits.

The Third Claim for Relief is likewise unsupported by any material facts. Donnelly alleges that BNY violated § 503 of ERISA, 29 U.S.C. § 1133 by failing to set forth in writing specific reasons for the denial of her claim in a manner calculated to be understood by her and by denying her a full and fair review.

Under the Plan, a participant who believes that she was denied benefits to which she is entitled is to first raise the matter with the Personnel Manager assigned to the participant's department at BNY. If that does not produce satisfactory results, the participant is to submit a claim in writing to the Plan Administrator, who is to respond to the claim within ninety days. If the claim was denied, the participant is to fill out a form that is to be submitted to the Trustee of the IBC Benefits Protection Trust, which is then to review the claim. If the Trustee finds that the claim has a basis in law or fact, it is to refer the claim to outside counsel retained for the purpose of pursuing benefits claims against BNY.

Donnelly submitted a formal claim and received a denial letter on January 25, 1991 which explained the reasons for the decision. The matter was then referred to the Trustee which also denied the claim.

Nothing in the Plan or the Summary Plan Description required the Plan Administrator to make a formal determination of eligibility for benefits under Section 4.2(a)(iii) until and unless the participant resigned. Accordingly, no claims procedure was violated by the refusal to give Donnelly a pre-determination of her claim for a severance benefit.

Finally, Donnelly has raised no facts which raise a material issue supporting her Fourth Claim for Relief against BNY. In this claim she alleges that BNY has interfered with her protected rights in violation of § 510 of ERISA, 29 U.S.C.

§ 1140. That section provides in relevant part that:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

The basis for this claim appears to be the allegation that the Plan is structurally defective under ERISA because it fails to provide a procedure through which a participant can obtain a determination of as to whether she will receive severance benefits prior to resigning. Thus, claims Donnelly, the Plan impermissibly forces the participant onto the "horns of a dilemma" in which she must choose between resigning and giving up wages and medical coverage or remaining beyond the sixty-day period and giving up her severance pay. *See* Plaintiff's Memo. in Opp. at 16.

Whatever else it may have been, the requirements of the Plan and BNY's conduct does not constitute "interference" under the statute. Section 510 reaches "conduct which fundamentally changes the employer-employee relationship so as to interfere with pension rights." *Swanson v. U.A. Local 13 Pension Plan*, 779 F.Supp. 690, 701 (emphasis added) (W.D.N.Y.) (further stating that § 510 is " 'aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights' ") (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir.1980)), *aff'd*, 953 F.2d 636 (2d Cir.1991); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988); *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 916–17 (2d Cir.), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). The most common basis for a § 510 is the discharge of an employee. *Swanson*, 779 F.Supp. at 702.

No such conduct is alleged here. On the facts presented, the most Donnelly can allege is that she was misled about her duties and responsibilities. This allegation does not give rise to a claim for "interference" or "discrimination" under § 510. *See Goins v. Teamsters Local 639—Employers Health & Pension Trust*, 598 F.Supp. 1151, 1153–55 (D.D.C.1984) (misleading statements about eligibility for benefits not actionable under section 510; section only prohibits discrimination "which is equivalent to a constructive discharge ... or which involves the use of economic sanctions or violent reprisals"). *Cf. Swanson*, 779 F.Supp. at 702–03 (even if defendant encouraged plaintiff to retire prematurely, such conduct "did not amount to the kind of direct interference in the employment relationship that is required to establish liability under § 1140").

Furthermore, the Plan's omission of a procedure for obtaining a determination of eligibility for severance pay prior to resignation does not constitute an inherent "interference" violative of § 510, assuming that such a thing could exist. Nothing in ERISA requires a plan administrator to make an anticipatory determination of eligibility for benefits. Section 503 subjects ERISA plans to only two procedural requirements: (i) "adequate notice in writing to any participant or beneficiary whose claim ... has been denied, setting forth the specific reasons for such denial ...;" and (ii) "a reasonable opportunity ... for full and fair review ..." of a denied claim. 29 U.S.C. § 1133. As discussed above, the Plan more than met these requirements by providing for both a written determination and a full and fair review. Section 502(a)(1)(B), which permits participants to sue to clarify their rights to future benefits under the terms of ERISA plans, does not require a plan to make a formal predetermination of a participant's right to a particular benefit before that participant is eligible to claim that benefit, and nothing in the provision bars a claimant from suing under the provision without such a predetermination. *See* 29 U.S.C. § 1132(a)(1)(B).

It is undisputed that BNYC advised plaintiff of its position as to her eligibility for a separation benefit several times be-

fore her resignation. Yet she did not even attempt to commence such an action. Thus, as a matter of law, Donnelly suffered no harm by this purported "defect."

### 3. Donnelly Has Failed to Support Her Claim Against the Trustee

■ The Trust Agreement expressly states that "[n]othing in this Agreement shall be construed to subject the Trust created hereunder to [ERISA]." Thus, although the Trust exists as an adjunct to an ERISA employee welfare benefit plan in the sense that it is intended to provide a litigation fund to assist former IBC employees whose claims for benefits under the Plan have been rejected, the Trust itself is not an actual plan. Indeed, the Trust corpus is not "available for payment of benefits to participants and beneficiaries under the Plans." Moreover, the Trust does not "exercise[ ] any discretionary authority or discretionary control respecting management of [the Plan] or exercise[ ] any authority or control respecting management or disposition of its assets," the definition of a fiduciary under ERISA. *See* Goodstein Reply Aff. ¶ 2; 29 U.S.C. § 1002(21).

As described above, the First and Second Claims for Relief [2] allege that a breach of fiduciary duties under ERISA by failing, neglecting, and refusing (i) to either inform Donnelly of her right to severance benefits, or (ii) to comply with the documents and instruments governing the Plan. Yet, the fiduciary duties are owed not by the Trustee, but rather by the plan administrator or the employer who established or succeeded to the Plan—namely, BNY. Indeed, sections 101 and 105 of ERISA, which set forth the obligation to furnish participants and beneficiaries summary plan descriptions, annual reports, and other documents

that specify the amount of accrued benefits, are directed to the *"administrator* of [each/an] employee benefit plan." *See* 29 U.S.C. §§ 1021, 1025 (emphasis added).

The Third Claim for Relief also does not apply to the Trustee. Section 503 of ERISA, which provides the basis for this claim, imposes an obligation upon "every employee benefit plan" to provide adequate written notice of the specific reasons for the denial of a claim and to afford claimants a reasonable opportunity to have the decision denying any such claim reviewed by the named fiduciary. *See* 29 U.S.C. § 1133(1), (2). This section creates obligations applicable to the plan only. In this regard, it is important to note that the claims review process mandated by the Trust is not the claims review process mandated by ERISA § 503, which requires Plan Administrator review.

Finally, the fourth claim for relief alleges that the Trust interfered with Donnelly's rights in violation of § 510, 29 U.S.C. § 1140, the text of which is provided above. As discussed, this section applies to "conduct which fundamentally changes the employer-employee relationship so as to interfere with pension rights." *Swanson,* 779 F.Supp. at 701. Even assuming that § 510 applies to the Trust,[3] the finding of an absence of any factual basis for the § 510 claim against BNY applies equally with respect to this claim against the Trust.

■ It is well-settled that the extent of a trustee's duties and powers is determined from the trust instrument itself and the rules of law that are applicable. *See Hendry v. Title Guar. & Trust Co.,* 165 Misc. 349, 352, 300 N.Y.S. 741, 745 (Sup.Ct.1937), *modified on other grounds,* 255 A.D. 497, 8 N.Y.S.2d 164 (1938), *aff'd mem.,* 280 N.Y. 740, 21 N.E.2d 515 (1939); *see also* Restatement (Second) Trusts § 201, comment (b).

---

**2.** The complaint does not distinguish between the Defendants in its claims for relief.

**3.** The Trust argues that § 510 is inapplicable to anyone other than the participant's "employer." The Second Circuit does not appear to have addressed this question, although at least one district court within this circuit has held that under the explicit language of § 510 employers are not the only persons or entities capable of

affecting the employment relationship in a way violative of the section. *See Swanson,* 779 F.Supp. at 701–02 (quoting § 510, which provides that it is "unlawful for *any person*" to engage in prohibited conduct (emphasis added)). It is unnecessary to address this issue, however, since no facts have been raised that create a material issue as to the Trust's violation of § 510.

The law under ERISA incorporates this common-law principal and requires adherence to the Trust documents.

 Here, the Trust provides, in pertinent part, that the Trustee shall provide assistance to a claimant "unless the Trustee shall determine that the claim has no basis in law and fact (in which case the Trustee shall notify the participant or beneficiary of such determination and shall take no further action with respect to the claim) ..." Conlan Aff. Ex. B Art. NINTH (d)(2). Thus, the Trust mandates that before the Trustee can take any action on behalf of a claimant, it must determine that the claim has a basis "in law and fact," which necessarily involves an evaluation of whether the claim meets the criteria set forth in the Plan.

In this case, the Trustee properly determined that Donnelly's claim for severance benefits did not satisfy the basic eligibility criteria set forth in the Plan. Specifically, while Donnelly complained that her duties and responsibilities were materially diminished without her consent following a Change in Control, she did not terminate her employment within sixty days of this alleged reduction as she was required to do by the express terms of the Plan. Thus, under the terms of the Plan, her resignation came too late to allow her to claim severance benefits.

In short, given the language of the Trust and the Plan, the Trustee had no option but to deny Donnelly's claim for severance benefits and she cannot come forward, as she must, with any evidence that would show that such denial constituted either a breach of fiduciary duty under ERISA or a breach of trust under common law. Under the circumstances, the Trust is entitled to judgment as a matter of law.

*Conclusion*

For the reasons set forth above, the motions by BNYC and the Trust are granted in all respects and the complaint dismissed.

It is so ordered.