**Iris T. CHASTAIN, Individually, and as next friend of Stephanie Chastain and Matthew Chastain**

v.

**DELTA AIR LINES, INC. and Aetna Life Insurance Company; Delta Family–Care Disability & Survivorship Plan (added 9/29/80).**

Civ. A. No. C79–1999A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 29, 1980.

James F. Stovall, III, Atlanta, Ga., for plaintiff.

Cynthia T. Beattie, Law Dept., Delta Air Lines, Atlanta, Ga., for Delta defendants.

Tommy T. Holland, of Carter, Ansley, Smith & McLendon, Atlanta, Ga., for Aetna.

## ORDER

NEWELL EDENFIELD, District Judge.

This is an action brought to recover benefits under a disability and survivorship plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). It is currently before the court on defendants' motion for summary judgment and on defendants' motion to strike plaintiff's request for a jury trial.

1. The facts giving rise to this action are largely undisputed. Plaintiff Iris Chastain (hereinafter also referred to as "plaintiff") is the mother and natural guardian of minor plaintiffs Stephanie and Matthew Chastain. These children are the issue of plaintiff's marriage to Edward Wayne Chastain (hereinafter referred to as "Chastain"). Plaintiff and Chastain were married in 1967.

The couple separated on August 22, 1977, on which date Chastain left plaintiff and the two children at the family's Morrow, Georgia home and moved to the home of a friend, Billy Barnes, in Thomaston, Georgia. Several weeks thereafter, Chastain moved to the house of a woman who lived in Forest Park, Georgia. In the meantime, plaintiff had filed a divorce action. On October 11, 1977, the Superior Court of Clayton County entered a decree granting plaintiff a divorce from Chastain. The decree incorporated an agreement between the parties providing that Chastain would convey the house in Morrow to plaintiff and would pay to plaintiff $450 per month—$150 for alimony and $150 per child for child support.

In mid-November 1977, Chastain moved out of the house of the woman who lived in Forest Park and resumed living with Billy Barnes for about a week. He then moved in with plaintiff for about a week. From then until February 1978, when he died, Chastain lived intermittently with plaintiff and Billy Barnes. Although he apparently spent most of his time in plaintiff's home, he also frequently stayed with Barnes. He kept a chair, a deer head, a gun and some papers at Barnes' house. He also kept a few clothes there, although he moved a duffle bag of clothes back to plaintiff's house sometime in November.

Chastain was killed on February 16, 1978. He had stayed in plaintiff's house for a period of two and a half weeks prior to his death, and the couple had discussed the possibility of remarrying. On the evening of February 15, 1978 Chastain and plaintiff went out to dinner together. Chastain then left to go spend a couple of days at Barnes' house in Thomaston. Plaintiff expected him to return to her home on the following Saturday, February 18. Early in the morning of Thursday, February 16, Chastain was killed in an automobile accident.

At the time of his death, Chastain was a permanent, full-time employee of defendant Delta Air Lines, Inc. ("Delta"). As a Delta employee, Chastain was a participant in the company's Family-Care Disability and Survivorship Plan (hereinafter referred to as the "Plan"). The Plan is a welfare benefit plan governed by the provisions of ERISA, 29 U.S.C. §§ 1001, *et seq.* Its administrator is the Administrative Committee of Delta Air Lines, Inc. The Administrative Committee has delegated to Delta's Pensions and Employee Insurance Department the responsibility for making initial determinations on claims for benefits under the Plan. The survivors' benefits of the Plan include (1) the right of a designated beneficiary to a lump-sum payment; and (2) the right of the deceased's "Eligible Family Members" as defined in the Plan[1] to receive monthly income benefits. Benefits are paid from the Plan's Benefit Fund, which includes a trust established by Delta, and from insurance policies obtained from defendant Aetna Life Insurance Company to implement the Plan.

A claim for lump-sum benefits is made automatically, based on beneficiary designation cards signed by employees. The amount of the lump-sum payment varies with the number of surviving Eligible Family Members. A claim for monthly income benefits is initiated by the submission of a Survivor Income Eligibility Statement to Delta's Pensions and employee Insurance Department.

Any determination by the Pensions and Employee Insurance Department that is adverse to the claimant is appealable to an Administrative Subcommittee, a body that the Administrative Committee has established for the purpose of reviewing claims decisions. If the Administrative Subcommittee also denies the claim, the claimant may request an additional review by the Administrative Committee. Such review by the Administrative Committee is the final step in the administrative determination procedure. Review in this court, however, is available pursuant to 29 U.S.C. § 1132(a)(1)(B).

On February 27, 1978, plaintiff submitted a claim for survivor's benefits under the Plan. She claimed her two children but not herself as Eligible Family Members. On May 9, 1978, Delta's Pensions and Employee Insurance Department issued to plaintiff a determination that her two children did not qualify as Eligible Family Members. Accordingly, this department determined that plaintiff as Chastain's designated beneficiary was entitled to receive a lump-sum payment of $15,876–the lump-sum amount payable under the Plan if Chastain had no Eligible Family Members–and that neither she nor her children were entitled to monthly income benefits since none were Eligible Family Members.

Plaintiff retained an attorney to prosecute an administrative appeal. At this time she also began pressing a claim that she qualified as an Eligible Family Member as Chastain's common-law spouse. The Administrative Subcommittee reviewed the claim and upheld the initial determination that Chastain had no surviving Eligible Family Members. The Subcommittee sent to plaintiff's attorney a letter dated July 25, 1978 explaining the basis for the ruling. The letter also gave notice of plaintiff's right to request within 90 days further review by the Administrative Committee.

1. The term "Eligible Family Member" is defined in the Plan generally to include an employee's legal spouse and those minor children who either were living in the employee's household or to whom he or she was providing more than 50% of their support. A more thorough discussion appears *infra*.

Although plaintiff expected her attorney to take such an appeal, he apparently did not do so. He did send a letter and certain documents to the Administrative Committee on November 27, 1978. The Committee responded, however, that if the letter was intended as a request for review, it was untimely.

A threshold issue in this action is the standard of review by which this court must examine administrative determinations under the Plan. All parties apparently agree that where an administrator of a plan subject to ERISA possesses broad discretionary powers, its actions are reviewable under the standard of whether those actions are arbitrary or capricious. This is clearly the law in the Fifth Circuit. In *Bayles v. Central States, Southeast & Southwest Areas Pension Fund*, 602 F.2d 97, 99 (5th Cir. 1979), the court in an action to recover under a pension plan subject to ERISA ruled that "the actions of the trustees in the administration of the pension plan must be sustained as a matter of law unless plaintiff can prove such activities have been arbitrary or capricious." The court cited with approval the Ninth Circuit's decision in *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir. 1976), in which the court set forth the applicable standard of review as follows:

> Where . . . the instrument defining the fiduciaries' duties gives them broad discretion, *as is generally the case with welfare and pension trusts*, the courts limit their review and intervene in the fiduciaries' decisions only where "they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run." [Citation omitted.] We find this standard of judicial review, which leads neither to abdica-

tion of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy.

*Id.* at 1371 (emphasis added). *See also Bueneman v. Central States, Southeast and Southwest Areas Pension Fund*, 572 F.2d 1208, 1209 (8th Cir. 1978); *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2d Cir. 1977); *Taylor v. Bakery & Confectionary Union*, 455 F.Supp. 816, 819 (E.D.N.C.1978); *Cawley v. NMU Pension & Welfare Plan*, 457 F.Supp. 301 (S.D.N.Y.1978); *Morgan v. Laborers' Pension Trust Fund*, 433 F.Supp. 518, 524 (N.D.Cal.1977).

The court has little trouble determining that the Administrative Committee that administers Delta's Plan has sufficiently broad discretionary powers to trigger the application of the "arbitrary and capricious" standard to decisions made by it. Under section 11.07 of the Plan, the Administrative Committee has, among other powers, the power (1) to establish and enforce rules, regulations, and procedures for the administration of the Plan; (2) to interpret the Plan and decide all questions of eligibility of employees to participate in the Plan or to receive benefits therefrom; and (3) to determine the amount, manner, and time of payment of benefits and to determine the person or persons to whom such benefits shall be paid. The power to resolve disputed claims is in itself indicative of "broad managerial and administrative discretion." *Taylor v. Bakery & Confectionary Union, supra*, at 819.

The determination of the Administrative Committee [2] that neither plaintiff nor her children qualify as Eligible Family Members must thus stand unless plaintiff can show that the decision is arbitrary or capri-

---

[2]. Actually, the Administrative Committee never reviewed the merits of plaintiff's claim for benefits. Plaintiff appealed only to the Administrative Subcommittee, which the Administrative Committee had assigned to hear initial appeals. Normally, plaintiff would be expected to have fully exhausted her administrative remedies before bringing this action. *Taylor v. Baker & Confectionary Union*, 455 F.Supp. 816, 820 (E.D.N.C.1978). She had expected her at-

torney to file a second appeal, but the filing was not timely. Defendants do not raise the exhaustion issue and in fact urge the court not to dispose of the case on this ground. For this reason, and for the reason that resort to a final appeal by plaintiff at this late date would appear to be futile, *see id.* at 820, the court in its discretion will waive the exhaustion requirement.

cious. The court must examine the administrative record and determine as a matter of law whether the decision to deny benefits to plaintiff and her children is supported by substantial evidence:

> Judicial review of the trustees' denial of an application for pension benefits is limited to determining whether the trustees' action was arbitrary or capricious, erroneous on a question of law, or not supported by substantial evidence. . . . Consequently, because the "arbitrary and capricious" standard of review must be applied in these cases, it has been held that these actions should be tried to the court, and not to a jury.

*Rice v. Hutton,* 487 F.Supp. 278, 280 (W.D. Mo.1980) (citations omitted); *see Genesta v. San Diego County Laborers' Pension Plan,* [1979] Pension Rptr. No. 265 (BNA), at D–2 (S.D.Cal.1979); *King v. Wagner Electric Corp. Contribution Retirement Plan,* [1979] Pension Rptr. No. 264 (BNA), at D–1 (E.D. Mo.1979); *Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* [1979] Pension Rptr. No. 239, at D–1 (S.D. Ind.1979). *But see Stamps v. Michigan Teamsters Joint Council No. 43,* 431 F.Supp. 745 (E.D.Mich.1977).

The Administrative Committee determined that plaintiff did not qualify as an Eligible Family Member. The applicable provision of the Plan—section 4.01(a)—states: "The term 'Eligible Family Members' shall mean the . . . [Employee's] spouse . . ., provided that for this purpose: 'spouse' shall refer to the legal wife or husband of the Employee on the Event Date. . . ." There is no dispute that plaintiff and Chastain were divorced on October 11, 1977. They lived apart from August 22, 1977 until mid-November 1977, at which time they began intermittently living together again. They had not formally remarried at the time Chastain died. Plaintiff stated in her deposition that, although the couple were considering remarriage,

they had made no definite plans to do so at the time of Chastain's death.

█ The court finds that these facts, all of which are undisputed, provide abundant support for the Committee's finding that plaintiff did not qualify as an Eligible Family Member. Plaintiff's claim for eligibility status rests on her assertion that she was the common-law wife of Chastain at the time of his death. Although certain facts might tend to support this assertion--such as the couple's fairly regular cohabitation in the weeks before Chastain's death, *e. g., Murray v. Clayton,* 151 Ga.App. 720, 261 S.E.2d 455 (1979), and Chastain's introduction of plaintiff to others as his "wife" [3] —the court must reject plaintiff's argument that the Committee's determination rested on mere "scraps of evidence" and was thus arbitrary and capricious. Accordingly, the court GRANTS defendants' motion for summary judgment with respect to the determination that plaintiff is not an Eligible Family Member.

The Administrative Committee also determined that plaintiff's two minor children, Stephanie and Matthew Chastain, did not qualify as Eligible Family Members. Section 4.01(b) of the Plan states in pertinent part:

> The term "Eligible Family Members" shall mean the [Employee's] . . . children, provided that for this purpose:
>
> \* \* \* \* \* \*
>
> (b) "Children" shall refer to children of the Employee who meet the requirements of each of the clauses . . . below as determined by the Administrative Committee based on such evidence as it may reasonably request to have furnished to it. . . .
>
> \* \* \* \* \* \*
>
> (ii) The children are either currently . . . living in the Employee's household; or . . . the Employee

---

3. Such introductions, the court notes, would not necessarily evidence a conviction on Chastain's part that plaintiff was his common-law wife. The couple had been formally married for twelve years prior to their divorce and sub-sequent reconciliation, and he may have referred to plaintiff as his wife out of habit, or intending more accurately to refer to his *former* wife, rather than as an affirmation of the couple's then-current marital status.

was contributing more than 50 percent of the support of such children on the Event Date. . . .

Plaintiff contends that the children met both the requirements of living in Chastain's household and receiving more than 50 percent of their support from him. With respect to the issue of whether the children lived in Chastain's household, the court finds substantial evidence supporting the Committee's conclusion that they were not. The children at all times relevant to this action lived in their mother's house in Morrow. Chastain moved out of this house on August 22, 1977. Although by the date of his death he was again staying in this house for frequent and perhaps extended periods, the evidence does not conclusively establish that this was his "household." Instead, the undisputed evidence indicates the transience of Chastain during this period. He spent significant periods of time at the home of Billy Barnes in Thomaston, to which he apparently was traveling when he died. The accident report prepared by the Georgia State Patrol in connection with the death lists Chastain's address as Thomaston, Georgia. In short, the finding that Chastain and his children were not living in the same household at the time of death is supported by substantial evidence.

Finally, the court considers whether the evidence supports the Committee's conclusion that Chastain was not contributing more than 50 percent of the children's support as of the date of his death. The Committee based this finding in large part on a report prepared by Charles T. Bishop, an independent claims adjustor, in which he compared the total amount of support available to the children with that provided by Chastain. The Bishop report found that plaintiff's net usable income was approximately $700[4] per month at the time of Chastain's death. Bishop then calculated the amount of support that plaintiff provided to each child by prorating this amount between the three family members, arriving at a figure of $233 per child. He then compared this figure to the $150 per month in support payments that Chastain was obligated to provide for each child, and concluded that Chastain's contribution to the support of each child amounted to only 39 percent of the total.[5]

The court must conclude that the Committee erred in basing its conclusion on the Bishop report. The report does not even attempt to make an independent calculation of the total amount necessary for the support of each child, but instead merely assumes such amount is the total amount available for support of the family divided by the number of family members. Under Bishop's method of calculation, the determining factor in the finding that the children do not qualify as Eligible Family Members becomes the total amount of support Chastain provided to the three-person family as compared with the total provided by plaintiff, not the total amount of support Chastain provided to each child as compared with the amount of support plaintiff provided to each child.

Having employed a faulty measure of the amount of support Chastain provided to each child in comparison with that provided by plaintiff (and other sources, if any) at the time of Chastain's death, the Committee must be found to have arbitrarily and capriciously denied plaintiff's application for Eligible-Family-Member status for the children. Accordingly, the court must DENY defendants' motion for summary judgment with respect to the determination that plaintiff's children are not Eligible Family Members. The case is REMANDED to the

4. This amount represented $590 in actual take-home pay and $110 in deductions from net pay for an auto loan. Plaintiff disputes these figures, stating that the $700 figure is from April 1978 and that she got raises in November 1977 and January 1978. The court notes, however, that the relevant date for determining support is the date of death and that both of plaintiff's raises came before this date. Accordingly, plaintiff's objection appears to have no merit.

5. Bishop made three alternate calculations of Chastain's portion of the total support provided to each child. Each, however, is based on proration principles similar to those set forth here, and is thus similarly objectionable.

Administrative Committee for further proceedings on the issue of whether Chastain was providing more than 50 percent of the total support available to each child at the time of his death. The court recognizes that the task of proving the dollar amount of support that plaintiff or Chastain was providing to each child at that time may not be an easy one. But such showings would appear to be essential elements of establishing whether or not these children qualify as Eligible Family Members and should not be sidestepped in favor of more simplistic, yet less piercing, proof. Finally, the court suggests that upon reopening these proceedings the Administrative Committee inquire into and make factual determinations on (1) the nature and extent of any extra money Chastain may have provided to plaintiff or the children in the weeks before his death, and (2) whether the life insurance Chastain maintained on himself for the children's benefit and the medical and dental insurance he maintained on the children should properly be included in the amount of support he provided them.[6]

■ 2. Next before the court is defendants' motion to strike plaintiff's demand for a jury trial. As stated above, this is a

6. Chastain was required to maintain these benefits pursuant to an agreement incorporated in plaintiff's divorce decree.

review of administrative action involving no independent fact-finding but only the determination of whether the Administrative Committee's decision was, as a matter of law, supported by substantial evidence. *E. g., Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir. 1980); *Rice v. Hutton,* 487 F.Supp. 278, 280 (W.D.Mo.1980). Plaintiff has no right to a jury trial. Accordingly, defendants' motion to strike plaintiff's demand for a jury trial is GRANTED.

In summary, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Defendants' motion to strike plaintiff's jury demand is GRANTED. The action is REMANDED to the Administrative Committee of the Delta Air Lines Family-Care Disability and Survivorship Plan for proceedings not inconsistent with this order.