**LINCOLN GENERAL HOSPITAL, Plaintiff,**

v.

**NEBRASKA STATE EDUCATION ASSOCIATION HEALTH CARE PROGRAM PLAN, et al., Defendants.**

**No. CV89–L–533.**

United States District Court, D. Nebraska.

March 5, 1991.

James C. Zalewski, Lincoln, Neb., for plaintiff.

John Thomas, Omaha, Neb., for defendants.

### MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

URBOM, Senior District Judge.

Lincoln General Hospital, as assignee of Delores Phillips, filed this suit to recover benefits allegedly due under a group health insurance policy administered by the defendant. The plaintiff contends that Ms. Phillips was entitled to COBRA continuous coverage from February 1, 1988. Blue Cross denies liability for the claim on the ground that Ms. Phillips' COBRA coverage was effective January 1, 1988, and terminated

January 31, 1988, for nonpayment of premiums.

Both parties have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear that no genuine issue of material fact remains and the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This standard does not change when cross motions for summary judgment are presented. Rather, "each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor." *Barhold v. Rodriguez,* 863 F.2d 233, 236 (2d Cir.1988).

*Facts*

In 1987, Roy Phillips was an employee of the Lincoln Public School systems (LPS) and participated in a group health insurance program provided by Blue Cross/Blue Shield of Nebraska ("Blue Cross"). His wife, Delores Phillips, and their two children were covered by that insurance plan as eligible dependents. Roy and Delores obtained a divorce which was final on December 9, 1987. Roy paid a premium for family coverage in January 1988, thereby providing insurance coverage for his son and daughter. However, by the terms of the insurance policy, a divorced spouse is not a covered dependent; therefore, despite the continued family coverage, Delores ceased to be covered by Roy's insurance at the end of December 1987, the month in which the divorce was final.

On February 1, 1988, Delores was in an automobile accident and was admitted to Lincoln General Hospital. She developed a blood clot in her leg from a phlebitis condition and eventually lapsed into a coma. The Lancaster County Court appointed a temporary guardian for Delores on February 4, 1988. The court appointed a different guardian during March 1988.

On February 3, 1988, Roy notified LPS that his divorce was final and filled out a COBRA continuation of coverage form to extend health insurance benefits for Delores. This form was mailed to Blue Cross along with a money order for the first month's premium. Blue Cross applied this premium retroactively to January 1, 1988, in order to provide continuous coverage for Delores. On February 15, 1988, Blue Cross mailed Delores a premium notice for premiums due for February and March 1988. No additional premiums were paid by or on behalf of Delores.

On February 15, 1988, Lincoln General called and verified Delores' coverage with Blue Cross. An interim bill for $93,930 was sent to Blue Cross by Lincoln General on March 8, 1988. Two days later, Blue Cross approved a two-week rehabilitation period at Madonna Nursing Home. Delores was discharged from Lincoln General to Madonna on March 11, 1988. Lincoln General submitted a final bill for $111,217.58 to Blue Cross on April 7, 1988. Blue Cross denied payment on the ground that Delores' coverage had been terminated on January 31, 1988, due to nonpayment of premiums. The bills submitted by Madonna for Delores' rehabilitative care were paid by Blue Cross.

Delores, unable to pay the hospital bills herself, subsequently assigned all rights on her insurance coverage to Lincoln General. The plaintiff has moved for summary judgment on the grounds that Blue Cross (1) failed to provide continuation of insurance coverage, (2) breached its fiduciary duty, and (3) waived its right to apply the first premium retroactively. The defendant has also moved for summary judgment and argues that Blue Cross complied with COBRA in providing continuous coverage.

*Retroactive Application of Premium*

The COBRA provisions are triggered by a "qualifying event" to provide continuous

coverage to qualified beneficiaries whose coverage would otherwise be terminated. *Id.* § 1161(a). Divorce is included as such a qualifying event. 29 U.S.C. § 1163(3). COBRA has specific notice requirements which must be complied with to ensure that all qualified beneficiaries have the opportunity to obtain continuous coverage. *Id.* § 1166. In the event of divorce between the covered employee and spouse, the employee must notify the plan administrator of the occurrence of the qualifying event within 60 days of the event. *Id.* § 1166(a)(3). The administrator must, in turn, notify any qualified beneficiary of the beneficiary's COBRA rights within 14 days of notice by the employee. *Id.* § 1166(a)(4)(B), (c). The continuation coverage is to begin upon the termination of the prior group policy. *Id.* §§ 1162(2), 1165(1)(A).

■ Lincoln General makes much of Blue Cross' failure to notify Delores of her COBRA rights. However, Blue Cross was under no duty to discover the qualifying event. A group insurance carrier often has no contact with individual employee beneficiaries let alone sufficient contact to follow their personal lives. In fact, even an employer who has continuing contact with the employee would not necessarily know the intimate details of the employee's life. Therefore, until the employee provided notice that the divorce had occurred, no action was required of Blue Cross. It is undisputed that Roy first gave LPS notice of the divorce on February 3, 1988, the same day he submitted a premium payment and election form for Delores. The election form signed by Roy was titled "Notice" and contained a recital of Delores' rights under COBRA.

■ I find no rule requiring Blue Cross to provide "official" notice after an election has actually been made. ERISA Op. Letter 90–16A, cited by the plaintiff in its brief, is inapposite to this issue. Rather, the director's ruling precludes a plan administrator from denying responsibility for giving notice under section 1166 by delegating this duty to another party. Under this ruling, an administrator must make

arrangements to ensure that the third party is actually providing the needed statutory notice. It contains no reference to an administrator's duty to provide notice once an election has actually been made.

Lincoln General also contends that Blue Cross did not comply with the notice requirements since the Notice signed by Roy was provided by LPS rather than Blue Cross. In light of ERISA Op. Letter 90–16A, Blue Cross may not deny responsibility for giving notice on the ground that it had delegated the task of giving notice to the employer. However, since an election was actually made providing Delores with continuous coverage, no purpose would be served by requiring Blue Cross to give additional notice of her COBRA rights which had already been recited in the Notice.

■ Similarly, Lincoln General's argument that the first premium should not have been applied retroactively to provide continuous coverage from January 1, 1988, is without merit. Section 1162(2) specifically directs that coverage must extend "from the period beginning on the date of the qualifying event." Since the qualifying event occurred after the beginning of the December period, coverage was terminated at the end of December. Therefore, even though the election was not made until after the end of January, the first month following termination of benefits, the premium was properly applied retroactively to provide continuous coverage.

I am somewhat troubled, however, by the absence of a clear explanation of the retroactive application of premiums. In *Communication Workers v. NYNEX Corp.*, 898 F.2d 887 (2d Cir.1990), the Second Circuit upheld an injunction ordering the employer to issue a notice clarifying the retroactive application of premiums paid pursuant to an election of COBRA continuous coverage. The court-ordered language clearly stated that the initial premium would be applied retroactively to the date coverage otherwise terminated. *Id.* at 890. I find no similar language in the Notice executed by Roy. While the retroactive application may be clear to lawyers

and judges, it may not be so clear to lay persons.

■ Nevertheless, the fact that Blue Cross timely issued a premium notice requesting payment for the February and March premiums gave Delores ample actual notice that the first payment had, in fact, been applied retroactively. Furthermore, the defendant's alleged inability to produce a copy of the premium statement does not give rise to a disputed issue since there is no evidence to refute Mr. Broderick's sworn statement that the statement was mailed on February 15, 1988.

■ The COBRA provisions contain no indication that a plan administrator's "technical" failure to comply with the notice statutes should impose liability despite a finding of actual notice and election of coverage. Although this issue has not been addressed directly by courts in the Eighth Circuit, a finding of prejudice is necessary to impose civil penalties in this circuit under 29 U.S.C. § 1132. *Wesley v. Monsanto Co.*, 554 F.Supp. 93 (E.D.Mo.1982), *aff'd* 710 F.2d 490 (1983). I find no prejudice here. The defendant's retroactive application of the premium was proper under the relevant statutes. In addition, the failure of Blue Cross to give statutory notice is without consequence in this case since an election for COBRA continuous coverage was actually made. When subsequent payments were not received within the 30–day grace period provided by the policy, Blue Cross lawfully terminated Delores' coverage for nonpayment of premiums on March 31, 1988. The propriety of retroactive termination was recognized by the court in *NYNEX*, 898 F.2d at 889 (applying 29 U.S.C. § 1162(2)(C)). Since only one month's premium was paid, the coverage was terminated effective January 31, 1988, and no coverage existed for charges incurred on or after February 1, 1988. Blue Cross has no liability to Lincoln General on the basis of failure to give statutory notice.

Similarly, the plaintiff's contention that Blue Cross waived its right to apply the first month's premium retroactively fails. In support of its position, Lincoln General cites IRS Proposed Regulation 1.162–26, Q & A 47 and IRC § 4980(F)(2)(A) for the proposition that retroactive application is waived for all participants if any participant is permitted to waive COBRA continuation coverage for any period after a qualifying event. The plaintiff presents evidence which is intended to show that other qualified beneficiaries were allowed to submit untimely payments. (Filing 63, Exhibits O, P, Q).

However, the proposition presented is not supported by the evidence. While Blue Cross permitted other plan participants to submit COBRA payments at a time later than the election of coverage, these payments were within the statutorily authorized period. *See* 29 U.S.C. § 1165 (election must be received within 60 days of the later of the date of notice or the last day of coverage); *id.* § 1162(3) (initial payment may be made anytime within 45 days of election). As stated earlier, Blue Cross correctly applied the initial premium retroactively to achieve continuous coverage and terminated coverage when subsequent payments were not received within 30 days.

### Breach of Fiduciary Duty

■ The plaintiff also argues that Blue Cross breached its fiduciary duty as a plan administrator as evidenced by the absence of proper notice and arbitrary denial of Delores' claim. As discussed earlier, the notice given by LPS did not clearly indicate that the initial premium was to be applied retroactively. However, this defect was cured when Blue Cross issued a request for payment of premiums for February and March, thereby clarifying that the first payment had not been applied to any period beginning in February. Since Delores was not prejudiced, no liability will be imposed based on the giving of statutory notice.

■ Summary judgment is also appropriate as to the argument that Blue Cross arbitrarily and capriciously denied the claims submitted by Lincoln General. The facts are undisputed that charges incurred by Delores during her hospitalization at Lincoln General were not paid by Blue Cross; yet, subsequent charges incurred

by Delores for rehabilitation at Madonna were paid. In addition, on February 15, 1988, Lincoln General requested preauthorization for Delores' treatment and a Blue Cross employee confirmed that Delores had medical coverage; no mention was made of the fact that the premium for February coverage had not yet been made. By contrast, in response to a similar request for preauthorization by Madonna on March 10, Blue Cross stated that coverage would apply "assuming the contract is in effect on the day the services are rendered." (Filing 46, Exhibit H).

In a letter to the Nebraska State Department of Insurance, a Blue Cross employee reported that the bills submitted by Madonna were paid "through an error in our office." (Filing 46, Exhibit H). The plaintiff has produced no evidence to refute this statement. The defendant's failure to recover from Madonna was within its rights under the terms of the plan which provide, in pertinent part:

> "Payment by the Company for noncovered services shall not make it liable for further payment for the same condition. The Company may recover payments it makes in error as provided by law. The Company's duty to seek refund of payments which appear to be greater than required by this Contract, or otherwise due it, shall be limited to reasonable efforts under all circumstances."

(Filing 46, Exhibit N at ¶ VIII.B).

Although it may seem unfair that Blue Cross erred only as to the claims submitted by Madonna, there is no evidence that the defendant acted arbitrarily or capriciously in denying payment to Lincoln General. Under the plan, payment to Lincoln General could not properly have been made.

Therefore, I shall grant the defendant's motion for summary judgment, filing 51, and enter judgment for Blue Cross. The plaintiff's motion for summary judgment, motion 46, is denied.